UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 5:25-cv-03306-SK Date: March 12, 2026
Title Feng Chen v. David Marin, et al.

Present: The Honorable: Steve Kim, United States Magistrate Judge

| Connie Chung | n/a |
| --- | --- |
| Deputy Clerk | Court Reporter / Recorder |
| Attorneys Present for Plaintiff(s)/Petitioner(s): None present | Attorneys Present for Defendant(s)/Respondent(s): None present |

**Proceedings:** (IN CHAMBERS) **ORDER GRANTING HABEAS PETITION AND DIRECTING IMMEDIATE RELEASE OF PETITIONER [ECF 1]**

## I. BACKGROUND

Petitioner Feng Chen (a.k.a. "Jason Chan") is a native and citizen of the People's Republic of China who entered the United States as a legal permanent resident in 1982. (ECF 1 at 1, 19-20; Declaration of Jorge Suarez ("Suarez Decl.") ¶ 2, ECF 11-1 at 1). Between 1996 and 1998, petitioner sustained multiple state felony convictions and served a lengthy prison sentence. (Suarez Decl. ¶¶ 3-4; ECF 1 at 20; ECF 21-2). Shortly after he was released on parole in January 2025, he was detained by U.S. Immigration and Customs Enforcement ("ICE") in February 2025 and charged with a notice of removal based on his qualifying criminal convictions including one for an aggravated felony. (ECF 1 at 20-21; Suarez Decl. ¶ 6). In March 2025, petitioner was ordered removed to China, and he did not appeal his final administrative order of removal. (Suarez Decl. ¶ 7; ECF 1 at 21). As of this order, however, petitioner has still not been removed to China—meaning he has been in ICE custody for essentially a year even after he was ordered removed.

In December 2025, while detained at the ICE detention center in Adelanto, petitioner filed a pro se habeas petition alleging that his prolonged post-removal detention is unconstitutional under *Zadvydas v. Davis,* 533 U.S. 678 (2001), because there is no significant likelihood of his removal to China in the reasonably foreseeable

future. (ECF 1 at 23). Shortly after, he was informed by his Deportation Officer Lourdes Palacios ("DO Palacios") that he would soon be placed on a flight to China. (ECF 15 at 7; Declaration of Lourdes Palacios ("Palacios Decl.") ¶ 3, ECF 21-1 at 1). But for reasons still not well explained, his flight was cancelled or he was prevented from boarding—and then he was transferred among ICE detention facilities for nearly a month without being removed. (ECF 15 at 5-6). Sometime in January 2026, petitioner was returned to Adelanto where he is currently detained. (ECF 1 at 1; ECF 11 at 3; ECF 14 at 1). He then submitted evidence in support of his petition, explaining his month-long ordeal, and asked for release because he faced indefinite detention with no prospect of removal to China in the reasonably foreseeable future. (ECF 15).

As a result, respondents were ordered to show cause why the petition should not be granted, and petitioner was eventually appointed counsel from the Federal Public Defender's Office. (ECF 16, 18). In that order, the court explained that petitioner had provided prima facie evidence establishing no significant likelihood of his removal to China in the reasonably foreseeable future. (ECF 16 at 2). Respondents were told that they could discharge the show-cause order by rebutting petitioner's showing "with an official declaration from an ICE official including authenticated evidence of either a date certain by which petitioner will receive his travel papers and board a scheduled flight to China or a confirmed date of petitioner's removal to China." (*Id.* at 3). But respondents filed not only an untimely response but also another vague and conclusory declaration by DO Palacios indicating only that travel documents have again been requested. (ECF 21, 21-1). At a March 11, 2026 evidentiary hearing, respondents did not produce DO Palacios for witness examination and submitted no further evidence. Respondents confirmed that they have no evidence of whether or when valid travel documents will be obtained or a removal flight scheduled. Nor did respondents have any evidence confirming whether or to what extent China is accepting detainees for repatriation, especially those with criminal backgrounds like petitioner's.

## II.
## DISCUSSION

Petitioner has been detained pursuant to an administratively final order of removal since March 2025. (ECF 1 at 4; Suarez Decl. ¶ 7). Therefore, it is undisputed that petitioner is presently detained pursuant to 8 U.S.C. § 1231(a)(6). (ECF 1 at 2; ECF 21 at 3-5). Under that statute, noncitizens subject to administratively final orders of

removal must be detained for 90 days to effectuate their removal. *See* 8 U.S.C. § 1231(a)(2). Once that mandatory detention period passes, however, the government has discretion to either detain certain inadmissible or criminal noncitizens beyond that initial removal period or release them subject to an order of supervision. *See id.* § 1231(a)(6); *accord Johnson v. Arteaga-Martinez*, 596 U.S. 573, 578-79 (2022) ("After the removal period expires, the Government 'may' detain only four categories of people: (1) those who are 'inadmissible' on certain specified grounds; (2) those who are 'removable' on certain specified grounds; (3) those it determines 'to be a risk to the community'; and (4) those it determines to be 'unlikely to comply with the order of removal.'").

In *Zadvydas*, the Supreme Court "read an implicit limitation" into § 1231(a)(6) "in light of the Constitution's demands" and held that the statute does not authorize indefinite detention. 533 U.S. at 689. Instead, a noncitizen's post-removal-period detention must be limited to "a period reasonably necessary to bring about that alien's removal from the United States." *Id.* To assess whether a noncitizen's post-removal-period detention is constitutional, the Supreme Court crafted a burden-shifting framework:

> After [a presumptively reasonable] 6-month period, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing. And for detention to remain reasonable, as the period of prior postremoval confinement grows, what counts as the "reasonably foreseeable future" conversely would have to shrink. This 6–month presumption, of course, does not mean that every alien not removed must be released after six months. To the contrary, an alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future.

*Id.* at 701. Under this framework, if the noncitizen establishes that his removal is not likely in the reasonably foreseeable future, and the government fails to rebut that showing, then he must be released under appropriate terms of supervision. *Id.* at 699–700. Applied here, *Zadvydas* mandates petitioner's release.

*First*, there is no dispute that petitioner's year-long post-removal detention has exceeded the "six-month" mark in *Zadvydas*. (ECF 11 at 4).

*Second*, petitioner has "provide[d] good reason to believe that there is no significant likelihood of removal [to China] in the reasonably foreseeable future." *Zadvydas*, 533 U.S. at 701. Despite the length of petitioner's detention, respondents have repeatedly failed to secure his travel documents despite their requests in August 2025, November 2025, and March 2026. (Palacios Decl., ¶ 12, ¶ 14). Even with the failed removal attempt in December 2025, it appears that respondents never had appropriate travel documents (including ones verifying petitioner's identity), which explains perhaps why he wasn't allowed to board a flight to China. (Palacios Decl., ¶ 13; ECF 15 at 5-8). In addition, petitioner has evidently done his part to secure his own travel documents (though to no avail). (ECF 15 at 3-4). He waived all appellate rights to his final removal order and surrendered all required identifying documents to respondents. (*Id.* at 3). He enlisted his extended family to contact Chinese consulates in multiple cities in the U.S. and the Chinese government directly, all "in the hopes of expediting his return to China." (*Id.*). Thus, petitioner has demonstrated that he will not likely be removed to China in the reasonably foreseeable future. *See Zadvydas*, 533 U.S. at 701 ("[A]s the period of prior postremoval confinement grows, what counts as the 'reasonably foreseeable future' conversely would have to shrink."); *see, e.g., Liu v. Casey*, 2026 WL 482863, at *5 (S.D. Cal. Feb. 20, 2026) (finding petitioner met his *Zadvydas* burden where no travel documents were issued even though petitioner "provided fingerprints, signed documents presented to him, took photographs, submitted his expired Chinese passport to ICE to cooperate with Respondents' efforts to remove him.") (cleaned up).

*Third* and last, respondents have not carried their burden to "respond with evidence sufficient to rebut" petitioner's showing. *Zadvydas*, 533 U.S. at 701. At most, they have just repeated a vague and conclusory assertion that travel documents have been requested (again) and that they expect petitioner can be removed sometime in the future. (ECF 21 at 3; Palacios Decl. ¶ 14). They concede they have no other evidence, including of whether the Chinese government has ever responded to (or even acknowledged) the request for travel documents. (ECF 21 at 2-3). All that remains is an "unsubstantiated possibility" that the Chinese government may, at some point, eventually provide travel documents for petitioner. *Liu*, 2026 WL 482863, at *5. On

that record, respondents cannot continue to detain petitioner consistent with federal due process. *See*, *e.g.*, *Seretse-Khama v. Ashcroft*, 215 F. Supp. 2d 37, 50 (D.D.C. 2002) (finding removal not reasonably foreseeable where government had "not demonstrated ... that any travel documents are in hand, nor have they provided any evidence, or even assurances from the [foreign] government, that travel documents will be issued in a matter of days or weeks or even months"); *see also Singh v. Gonzales*, 448 F. Supp. 2d 1214, 1220 (W.D. Wash. 2006) (ICE did not meet its burden where it "merely assert[ed] that it has followed up on its request for travel documents" but could provide no "substantive indication regarding how or when it expect[ed] to obtain the necessary travel document from the [foreign] government.").

## III.
## CONCLUSION

For all these reasons, the petition under 28 U.S.C. § 2241 is GRANTED. IT IS ORDERED that respondents immediately release petitioner from ICE custody under an appropriate order of supervision and file a notice of compliance within 48 hours of petitioner's release. Failure to comply with this order may lead to contempt proceedings. Judgment will be entered accordingly.

The Clerk of the Court is instructed to docket this order forthwith.